SLIP OP 16-12

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| THE BARDEN CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>    Defendant. | Before:  Timothy C. Stanceu, Chief Judge<br>    Leo M. Gordon, Judge<br>    Gregory W. Carman, Senior Judge<br><br>Consol. Court No. 06-00435 |

**OPINION**

[Plaintiff's motion for judgment on the agency record denied; certain claims dismissed for lack of standing; judgment for Defendants.]

Dated: February 10, 2016

Max F. Schutzman, Andrew T. Schutz, and Kavita Mohan, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of New York, New York, for Plaintiff The Barden Corporation.

Martin M. Tomlinson, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States. With him on the brief were Stuart F. Delery, Assistant Attorney General, Jeanne E. Davidson, Director, and Frank E. White, Jr., Assistant Director. Of counsel on the brief were Suzanna Hartzell-Baird and Jessica Miller, Office of the Assistant Chief Counsel, U.S. Customs and Border Protection, of Washington, DC.

Patrick V. Gallagher, Jr., Attorney-Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington, DC, for Defendant U.S. International Trade Commission. With him on the brief were Dominic Bianchi, General Counsel, and Robin L. Turner, Acting Assistant General Counsel for Litigation.

Terence P. Stewart, Geert De Prest, and Patrick J. McDonough, Stewart and Stewart, of Washington, DC, for Defendant-Intervenors Timken US Corporation and MPB Corporation.

Gordon, Judge: Plaintiff, The Barden Corporation ("Barden"), a domestic producer of antifriction bearings ("AFBs"), initiated these consolidated actions[1] against the United States asserting constitutional challenges to the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA"), Pub. L. No. 106-387, §§ 1001-03, 114 Stat. 1549, 1549A-72-75 (2000), codified at 19 U.S.C. § 1675c (2000),[2] repealed by Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601(a), 120 Stat. 4, 154 (2006).[3]

Barden applied for, but was denied, shares for Fiscal Years ("FYs") 2007, 2008, and 2009 of CDSOA distributions of antidumping duties assessed under various AFB antidumping duty orders issued in 1989.[4] U.S. Customs and Border Protection

---

[1] Under Consol. Court No. 06-00435 are Court Nos. 07-00063, 08-00350, 08-00389, 10-00050, and 12-00247.

[2] Citations to 19 U.S.C. § 1675c are to the 2000 edition of the United States Code. All other citations to the United States Code are to the 2012 edition.

[3] Congress repealed the CDSOA in 2006, but the repealing legislation provided that "[a]ll duties on entries of goods made and filed before October 1, 2007, that would [but for the legislation repealing the CDSOA], be distributed under [the CDSOA] shall be distributed as if [the CDSOA] had not been repealed . . . ." Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601(b), 120 Stat. 4, 154 (2006). In 2010, Congress further limited CDSOA distributions by prohibiting payments with respect to entries of goods that as of December 8, 2010 were "(1) unliquidated; and (2)(A) not in litigation; or (B) not under an order of liquidation from the Department of Commerce." Claims Resolution Act of 2010, Pub. L. No. 111-291, § 822, 124 Stat. 3064, 3163 (2010).

[4] Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings and Parts Thereof From the Federal Republic of Germany, France, Italy,

("Customs" or "CBP") denied Barden's applications for FYs 2007, 2008, and 2009 under a provision of the CDSOA (the "acquisition provision") that makes a domestic producer ineligible to receive CDSOA distributions if it was "acquired by a company or business that is related to a company that opposed the investigation" resulting in the issuance of the relevant antidumping duty order. 19 U.S.C. § 1675c(b)(1). As to FYs 2010 and 2011, Barden made no application for CDSOA distributions.

Regarding claims for FYs 2007, 2008, and 2009, Barden raises two as-applied challenges to the constitutionality of the acquisition provision. First, Barden claims that Customs violated Barden's constitutional right to equal protection by denying Barden CDSOA eligibility without a rational basis, asserting that Barden is situated similarly to other domestic producers that received CDSOA distributions. Second, Barden claims that Customs applied the acquisition provision retroactively and thereby violated Barden's right to due process. For FYs 2010 and 2011, Barden challenges Customs' application of the acquisition provision of the CDSOA to Barden under the First Amendment, equal protection doctrine, and due process clause.

Before the court is Plaintiff's motion for judgment upon the agency record, submitted under USCIT Rule 56.1. Plaintiff seeks (1) declaratory relief stating that the acquisition provision as applied to it is unconstitutional on equal protection and retroactivity grounds, and (2) an affirmative injunction requiring Customs to distribute

---

(cont.)
Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom, 54 Fed. Reg. 20,900, 20,900-11 (Dep't of Commerce May 15, 1989).

CDSOA funds to Barden. For the reasons set forth below, the court denies Plaintiff's Rule 56.1 motion and will enter judgment for Defendants.

## I. Background

The background of this litigation is summarized briefly below and provided in detail in Barden Corp. v. United States, 36 CIT ___, 864 F. Supp. 2d 1370 (2012) ("Barden I"). The court presumes familiarity with the CDSOA, the underlying antidumping duty investigations, the procedural history of the decisions by the U.S. International Trade Commission ("ITC") and Customs regarding the CDSOA distributions for the subject fiscal years, and the underlying facts in this action as described in Barden I.

Barden expressly supported the petition underlying the antidumping duty investigation that resulted in the 1989 antidumping duty orders on AFBs. In 1991, Barden was acquired by FAG Kugelfischer Georg Schaefer KGaA, a German producer of AFBs whose U.S. affiliate, FAG Bearings Corporation, opposed the AFBs antidumping duty petition. See Compl. ¶ 10, ECF No. 4.[5] In 2002, FAG Kugelfischer Georg Schaefer KGaA, FAG Bearings Corporation, and Barden were acquired by INA-Schaeffler KG, another German producer of AFBs. Id. INA's U.S. manufacturing affiliate, INA Bearing Co., Inc., also opposed the antidumping duty petition. Br. in Supp. of Pl.'s Rule 56.1 Mot. for J. Upon the Agency R. 4, ECF. No. 95 ("Barden's Br.") (citing INA Bearing Co., Inc. Producer's Questionnaire Responses, Docs. 4-5, ECF No. 86-7).

---

[5] Citations to the "Complaint" are to the complaint Plaintiff filed in Court No. 06-00435, unless otherwise specified.

In December 2000, as required by the CDSOA, the ITC transmitted to Customs a list of antidumping and countervailing duty orders in effect as of January 1, 1999, along with a list of those companies that had indicated "public" support for the petition seeking initiation of the antidumping duty investigation on AFBs. See Letter from USITC to Customs Re: List of Entities Indicating Public Support of Petition (Dec. 29, 2000), Doc. 5, ECF No. 95-1. Inclusion on the ITC's list of supporters of the petition is a necessary, but not a sufficient, condition for receiving distributions under the CDSOA. The initial ITC list of supporters of the petition resulting in the AFBs orders did not include Barden because Barden had not waived confidentiality for its expression of support for the petition. As a result, Customs' notices of intent to distribute for FYs 2004, 2005, and 2006 did not include Barden.

Barden initially was excluded from Customs' notice of intent to distribute for FY 2007. See Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers, 72 Fed. Reg. 29,582 (Dep't of Homeland Security May 29, 2007). However, it subsequently filed the necessary waiver of confidentiality and certifications with the ITC. See Letter from Barden and Schaeffler Containing Certifications for FY 2007 (July 27, 2007), Doc. 7, ECF No. 95-1. Thereafter, the ITC added Barden to the FY 2007 list of supporters of the petition. See Letter from USITC to Customs Re: Revision of Commission's List of Petitioners to Include Barden (Aug. 3, 2007), Doc. 8, ECF No. 95-1. Customs nevertheless denied Barden's application for FY 2007 CDSOA distributions because Barden was not included on the ITC's initial list. See Letter from CBP to Barden Denying Barden's Request for CDSOA Disbursements (Sept. 21, 2007), Doc. 9, ECF No.

95-1. Barden requested reconsideration. <u>See</u> Letter from Barden to CBP Requesting Reconsideration of CDSOA Disbursements (Dec. 20, 2007), Doc. 10, ECF No. 95-1.

Customs denied the request for reconsideration, reasoning that Barden "appears to have been acquired by a company that opposed the antidumping duty investigations." Letter from CBP to Barden Denying Reconsideration for 2007 CDSOA Disbursements (Jan 15, 2008), Doc. 11, ECF No. 95-1. Customs later rejected Barden's certifications and requests for distributions for FYs 2008 and 2009, using the same rationale. <u>See</u> Letters from CBP to Barden Denying Reconsideration for 2008 and 2009 CDSOA Disbursements (Sept. 5, 2008 & Aug. 19, 2009), Docs. 12-13, ECF No. 95-1.

The court previously dismissed Barden's First and Fifth Amendment challenges to the distributions for FYs 2004, 2005, and 2006. Regarding FY 2004, the court held that the claims against the ITC were time-barred and that no relief could be granted for the claims against Customs. <u>Barden I</u>, 36 CIT at ___, 864 F. Supp. 2d at 1376-77. The court also dismissed Barden's claims for FYs 2005 and 2006 for failure to state a claim upon which relief can be granted, on the ground that Barden, prior to 2007, failed to provide the required waiver of confidential treatment for its support of the petition. <u>Id.</u> at ___, 864 F. Supp. 2d at 1377-78. For the same reason, the court concluded that Barden's constitutional challenge to the retroactive aspect of the CDSOA failed for FYs 2005 and 2006. <u>Id.</u> at ___, 864 F. Supp. 2d at 1378-79. Finally, the court held that Barden's remaining constitutional claims for FYs 2005 and 2006, which challenged the petition support requirement, were foreclosed by the binding precedent of <u>SKF USA, Inc. v. U.S.</u>

Customs and Border Protection, 556 F.3d 1337 (Fed. Cir. 2009) ("SKF"), cert. denied, 560 U.S. 903 (2010). Barden I, 36 CIT at ___, 864 F. Supp. 2d at 1378.

The court, however, denied motions to dismiss by Defendants and Defendant-Intervenors directed to Barden's claims for CDSOA disbursements for FYs 2007, 2008, and 2009. The court stated that "[b]ecause the acquisition clause has not been subjected to judicial challenge on constitutional grounds, either in SKF or in any other case, the questions of whether the acquisition clause is permissible under the First Amendment and whether that clause is permissible under the equal protection guarantee remain matters of first impression." Id. at ___, 864 F. Supp. 2d at 1380. The court declined to consider the constitutional and related questions, including those pertaining to retroactivity, at the pleading stage, when the administrative record was not yet before the court. Id.

## II. Discussion

The court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1581(i)(4). See id. at ___, 864 F. Supp. 2d at 1373 (citing Furniture Brands Int'l, Inc. v. United States, 35 CIT ___, ___, 807 F. Supp. 2d 1301, 1307-10 (2011)). The court reviews the constitutionality of a statute de novo. See Princess Cruises, Inc. v. United States, 201 F.3d 1352, 1357 (Fed. Cir. 2000).

Congress enacted the CDSOA in 2000 to provide annual distributions to "affected domestic producers" ("ADPs") of duties collected on outstanding antidumping and countervailing duty orders, such as the antidumping duty orders on AFBs, to offset "qualifying expenditures" of those ADPs. 19 U.S.C. § 1675c(a). The statute defines an

ADP generally as any manufacturer remaining in operation that "was a petitioner or interested party in support of the petition with respect to which an antidumping duty order . . . has been entered." 19 U.S.C. § 1675c(b)(1) (the "petition support requirement").

The definition of an ADP is in turn limited by the acquisition provision, which provides: "Companies, businesses, or persons . . . who have been acquired by a company or business that is related to a company that opposed the investigation shall not be an affected domestic producer." Id. A company or business is "related to" another if, inter alia, it "directly or indirectly controls or is controlled by the other" or "a third party directly or indirectly controls both" companies or businesses. 19 U.S.C. § 1675c(b)(5). A company or business "shall be considered to directly or indirectly control another party if the party is legally or operationally in a position to exercise restraint or direction over the other party." Id.

## A.  Claims Relating to FYs 2007, 2008, and 2009

The court first considers Barden's as-applied constitutional claims seeking CDSOA disbursements for FYs 2007, 2008, and 2009. Barden's claims are, in essence, that the acquisition provision was applied to it in violation of its right to equal protection and, due to an alleged retroactive application, also in violation of its right to due process. In its complaints, Barden had also included First Amendment challenges to the acquisition provision for these fiscal years. See Barden I, 36 CIT at ___, 864 F. Supp. 2d at 1379-80. In its Rule 56.1 motion and supporting briefs, Barden asserts only the equal protection and due process retroactivity claims. Therefore, the First Amendment claims with respect to FYs 2007, 2008, and 2009 have been waived. See USCIT R. 56.1(c)(1)

(stating that "the briefs submitted on the motion . . . must include a statement setting out . . . [t]he issues of law presented together with the reasons for contesting or supporting the administrative determination").

### i. Equal Protection

A party may challenge federal economic legislation on equal protection grounds under the due process clause of the Fifth Amendment. See U.S. R.R. Retirement Bd. v. Fritz, 449 U.S. 166, 173-177 (1980) (identifying the standard governing a Fifth Amendment equal protection challenge to the Railroad Retirement Act of 1974 as the same standard applying to a Fourteenth Amendment equal protection challenge to state legislation); see also Mathews v. De Castro, 429 U.S. 181, 182 n.1 (1976) ("It is well settled that the Fifth Amendment's Due Process Clause encompasses equal protection principles."). For an equal protection claim, a plaintiff maintains that it "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). "[A] classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Armour v. City of Indianapolis, 132 S. Ct. 2073, 2080 (2012) (quoting Heller v. Doe, 509 U.S. 312, 319-20 (1993)). The statute will be upheld if "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Id. (quoting FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993)). A rational basis may be found if "there is a plausible policy reason for the classification, the legislative facts on

which the classification is apparently based rationally may have been considered to be true by the governmental decision-maker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." Id. (quoting Nordlinger v. Hahn, 505 U.S. 1, 11 (1992)).

To examine whether a rational basis exists to support a statute challenged on equal protection grounds, the court first must "deduce the independent objectives of the statute" and then must "analyze whether the challenged classification rationally furthers achievement of those objectives." Fritz, 449 U.S. at 187 (Brennan, J., concurring). The burden is on the party raising the constitutional challenge "'to negative every conceivable basis which might support [the statute],' whether or not the basis has a foundation in the record." Heller, 509 U.S. at 320-21 (quoting Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364 (1973)).

The U.S. Court of Appeals for the Federal Circuit ("Court of Appeals") has discussed the purposes underlying both the petition support requirement and the acquisition provision of the CDSOA. In an action challenging the constitutionality of the petition support requirement, the Court of Appeals concluded that "[t]he purpose of the [CDSOA]'s limitation of eligible recipients was to reward injured parties who assisted government enforcement of the antidumping laws by initiating or supporting antidumping proceedings." SKF, 556 F.3d at 1352; accord Schaeffler Group USA, Inc. v. United States, 786 F.3d 1354, 1363-64 (Fed. Cir. 2015). The CDSOA "shifts money to parties who successfully enforce government policy." SKF, 556 F.3d at 1356-57. The Court of Appeals in Candle Corp. of America v. U.S. Int'l Trade Comm'n, 374 F.3d 1087, 1094

(Fed. Cir. 2004) ("Candle Corp."), construed the acquisition provision. The Court of Appeals held that the acquisition provision denied eligibility for CDSOA benefits not only to a domestic producer acquired by a business related to a company that opposed the investigation but also to a domestic producer acquired by a company that itself opposed the investigation. Id. The Court of Appeals concluded that "[t]he purpose of the statute is quite clear—to bar opposers of antidumping investigations from securing payments either directly or through the acquisition of supporting parties." Id. Candle Corp., a case of statutory construction, did not involve questions regarding the constitutionality of the acquisition provision.

The dual purposes of the CDSOA—rewarding those who helped enforce U.S. antidumping laws by filing or supporting petitions and precluding rewards that benefit opponents of an investigation—are intertwined. The purpose of the petition support requirement, as identified by the Court of Appeals, could be defeated if the statute did not contain the acquisition provision. For instance, a party that opposed an antidumping duty investigation could acquire a petition supporter to benefit, directly or indirectly, from CDSOA distributions even though it had opposed the very investigation resulting in the relevant antidumping duty order. There is at least a "plausible policy reason," Armour, 132 S. Ct. at 2080, for differentiating between a domestic producer acquired by an opponent of an investigation, or by a business related to an opponent of an investigation, and one not so acquired. Therefore, the court must conclude that "the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." Id.

Barden argues that it cannot reasonably be differentiated from other domestic producers. According to Barden, "the mere fact of a company's stock ownership bears no reasonable relation to the essential purpose of the CDSOA." Barden's Br. 8. Similarly, Barden maintains that its support of the AFBs petitions "place[s] it squarely within the category of injured parties that should be rewarded" pursuant to the CDSOA's purpose as divined by the Court of Appeals in SKF. Id. at 13. Barden contends that its "later acquisition by a German company, whose related affiliate opposed the petition," does not "invalidate" Barden's entitlement to a CDSOA distribution. Id. However, as Defendant United States points out, Barden's argument "ignores the economic reality that a benefit to a subsidiary company . . . necessarily benefits the parent company, either directly or indirectly." Def. U.S. Customs and Border Prot.'s Resp. to Pl.'s Rule 56.1 Mot. for J. Upon the Agency R. 17, ECF No. 102. By defining "related to" in terms of legal or operational control, see 19 U.S.C. § 1675c(b)(5), Congress furthered its intention to ensure that opponents of investigations would not benefit, directly or indirectly, from CDSOA disbursements derived from petition support.

Barden also argues that distinguishing an acquired company from a non-acquired company on grounds of ownership is arbitrary because it could allow the distribution of CDSOA benefits to a domestic producer who acts contrary to the legislative purpose. Barden's Br. 16 (submitting that the acquisition provision permits ADPs to import dumped merchandise, purchase a foreign company and dump subject merchandise, oppose continued duties in sunset reviews, or move operations to a target country and directly dump subject merchandise). This appears to be an argument that Congress could have

done <u>more</u> to restrict rewards and acted arbitrarily by not doing so. Even were the court to accept the premise apparently underlying Barden's argument, it still would be "compelled under rational-basis review to accept [the] legislature's generalizations even when there is an imperfect fit between means and ends." <u>Heller</u>, 509 U.S. at 321. The court must uphold a statute "even if it does not do a perfect job of selecting those cases that appear to be appropriate subjects of congressional concern." <u>Black v. Sec'y of Health & Human Servs.</u>, 93 F.3d 781, 788 (Fed. Cir. 1996). Whether Congress should have placed further restrictions upon the receipt of CDSOA distributions is not a question for the court. <u>See</u> <u>Beach Commc'ns</u>, 508 U.S. at 315-16 ("Defining the class of persons subject to a regulatory requirement—much like classifying governmental beneficiaries—inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact that the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration.") (internal quotations and citations omitted). In an equal protection context, the court must uphold distinctions established by Congress where "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." <u>Id.</u> at 313.

The court concludes that the acquisition provision does not abridge the equal protection guarantee of the Fifth Amendment because a rational relationship exists between the restriction it imposes and the overall purposes of the CDSOA. <u>See</u> <u>Armour</u>, 132 S. Ct. at 2080.

**ii. Retroactivity**

Barden grounds its due process retroactivity claim upon a contention that Customs applied the CDSOA retroactively and therefore impermissibly disqualified Barden from receiving disbursements for FYs 2007, 2008, and 2009 based on Barden's acquisition by FAG Kugelfischer Georg Schaefer KGaA. Rep. Br. in Supp. of Pl.'s Rule 56.1 Mot. for J. Upon Agency R. 13, ECF No. 109 ("Barden's Reply"). According to Barden, the disqualifying acquisition occurred in 1991, long prior to the 2000 enactment of the CDSOA. Id.; Compl. ¶ 10; Barden's Br. 4. Defendants Customs and ITC, and Defendant-Intervenor Timken, argue that Barden lacks standing to raise a retroactivity challenge to the constitutionality of the CDSOA. The court agrees.

As noted above, Customs issued a letter denying Barden's request for reconsideration of the earlier denial of benefits for FY 2007, reasoning that Barden "appears to have been acquired by a company that opposed the antidumping duty investigations." Letter from CBP to Barden Denying Reconsideration for 2007 CDSOA Disbursements (Jan. 15, 2008), Doc. 11, ECF No. 95-1. Customs stated the same reason for denying Barden's requests to receive CDSOA disbursements for FYs 2008 and 2009. See Letters from CBP to Barden Denying Reconsideration for 2008 and 2009 CDSOA Disbursements (Sept. 5, 2008 & Aug. 19, 2009), Docs. 12-13, ECF No. 95-1. CBP's finding that Barden "appears to have been acquired by a company that opposed the antidumping duty investigations" (a finding that Barden does not contest in this litigation) is vague. Customs' denial letters, using the singular word "company," refer to only one acquisition. The letters do not specify whether the referenced acquisition was the one that

took place in 1991 or the one that took place in 2002, nor do they specify the entity Customs found to have "opposed the antidumping duty investigations." The record as a whole does not reveal whether Barden was denied ADP eligibility based on an acquisition that occurred prior to the 2000 enactment of the CDSOA or one that occurred thereafter.

Barden grounds its retroactivity claim in an assertion that Customs disqualified Barden based on the 1991 acquisition. Barden's Reply 13. If, instead, Customs was referring in its denial letters to the 2002 acquisition, Barden would lack standing to bring any due process claim on the ground of retroactivity. Therefore, for purposes of analyzing the standing issue presented by Barden's retroactivity claim, the court presumes that Customs was referring to the 1991 acquisition in its denial letters.

Standing is a "threshold jurisdictional question" stemming from Article III of the Constitution, which "extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies.'" Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998) (quoting U.S. Const. art. III, § 2). Based on this limitation, as well as "the separation-of-powers principles underlying that limitation," the Supreme Court has "deduced a set of requirements that together make up the 'irreducible constitutional minimum of standing.'" Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1386 (2014) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). "The plaintiff must have suffered or be imminently threatened with a concrete and particularized injury in fact that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." Id. (internal quotations and citations omitted).

For purposes of standing, Barden can show that it incurred an injury by reason of CBP's denial letters. However, in addition to demonstrating that it experienced an injury in fact caused by the action being challenged, a plaintiff must demonstrate for standing that a favorable judicial decision on its claim could redress that injury. See Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n, 135 S. Ct. 2652, 2663 (2015). If the court were to presume that Customs applied the statute to Barden in an impermissibly retroactive manner based on the 1991 acquisition, Barden still would need to demonstrate that it qualified for CDSOA benefits during FY 2007, 2008, or 2009. Barden cannot make this showing.

Barden states that it was "acquired in 2002 by INA-Schaeffler KG, a bearing producer based in Germany" that, according to Barden, "did not support the original AFBs investigation." Compl. ¶ 10. The court assumes that non-support of the investigation is insufficient to trigger disqualification under the acquisition provision. However, opposition does trigger disqualification. See 19 U.S.C. § 1675c(b)(1). It appears that Barden's acquirer went beyond mere non-support and actually opposed the investigation. Barden stated that INA-Schaeffler KG "opposed the original AFBs investigation," adding that INA Bearing Co., Inc., the U.S. production affiliate of INA-Schaeffler KG, "opposed the petition as well." Barden's Br. 4 (emphasis added) (citing INA Producer's Questionnaire Response, Doc. 4, ECF No. 86-7).

To obtain a CDSOA distribution in any form for FY 2007, 2008, or 2009, Barden would have to make two showings. First, Barden would have to contradict its own assertions and show that its 2002 acquirer, INA-Schaeffler KG, did not oppose the AFBs

investigation. Second, Barden would also have to demonstrate that the opposition of INA Bearing Co. to the petition (and therefore, the investigation) would not have disqualified Barden from receiving a benefit. Based upon the representations Barden has made in this litigation, the court concludes that Barden would not succeed. Barden has made the unqualified statement that INA-Schaeffler KG "opposed the original AFBs investigation." Barden's Br. 4. Due to Barden's characterization in its brief of INA Bearing Co., Inc. as the "U.S. production affiliate" of INA-Schaeffler KG, Barden also would fail in attempting to show that INA-Schaeffler KG is not "related to" INA Bearing Co., Inc. within the meaning of the acquisition provision. Barden's representations indicate, at least, a relationship between the two companies characterized by a level of direct or indirect control sufficient to meet the related party definition in the CDSOA. See 19 U.S.C. § 1675c(b)(5) ("For purposes of this paragraph, a party shall be considered to directly or indirectly control another party if the party is legally or operationally in a position to exercise restraint or direction over the other party.").

In sum, Barden could not demonstrate its qualification for a CDSOA benefit for FY 2007, 2008, or 2009 even if the court were to conclude that the CDSOA was retroactively applied in a constitutionally impermissible way. Therefore, the court must dismiss for lack of standing Plaintiff's due process retroactivity claims.

### B. Claims Relating to FYs 2010 and 2011

Barden's complaint in Court No. 12-00247 asserts constitutional challenges to the CDSOA in relation to distributions for FYs 2010 and 2011 based on First Amendment, equal protection, and due process retroactivity grounds. Barden did not address these

claims in its Rule 56.1 motion or supporting briefs and thus appears to have waived them.[6]

See USCIT Rule 56.1(c). However, the court does not reach the issue of waiver because

the court concludes that it has no jurisdiction over these claims.

The court must determine whether standing, and thus jurisdiction, exists even

when no party raises the issue. See Steel Co., 523 U.S. at 94 (quoting Great S. Fire Proof

Hotel Co. v. Jones, 177 U.S. 449, 453 (1900)). As discussed above, standing is a

threshold question implicating whether the court is able to use the judicial powers granted

by the U.S. Constitution. Id. at 102 (quoting U.S. Const. art. III, § 2). "For the court to

pronounce upon the meaning or the constitutionality of a . . . federal law when it has no

jurisdiction to do so is, by very definition, for a court to act ultra vires." Id. at 101-02.

Barden's standing problem for FYs 2010 and 2011 is not for lack of alleging injury.

Barden claims that its competitors received CDSOA distributions in these years while

Barden did not. This claim suffices to allege an injury for standing purposes. However,

Barden's allegations and the administrative record establish that Customs did not cause

Barden's injury.

In the context of standing, causation requires "a fairly traceable connection

between the plaintiff's injury and the complained-of conduct of the defendant." Id. at 103

(citing Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976)). The "complained-

---

[6] The court notes that Court No. 12-00247 was consolidated with Court No. 06-00435 on
February 11, 2014. Order, ECF No. 88. Thereafter, on February 14, 2014, the court issued
(cont.)
its scheduling order for briefing on the merits of remaining claims in this consolidated
action. Order, ECF No. 89.

of conduct" may take the form of an adverse agency decision. See, e.g., Ashley Furniture Indus., Inc. v. United States, 734 F.3d 1306 (Fed. Cir. 2013) (challenging CBP decision not to provide plaintiff with CDSOA distribution). On occasion, the complained-of conduct may be an agency's failure to act. See, e.g., Sioux Honey Ass'n v. Hartford Fire Ins. Co., 672 F.3d 1041, 1061 (Fed. Cir. 2012) (finding standing where plaintiff alleged injury caused by Customs' failure to take required discrete agency action). However, agency inaction will give rise to standing only where "a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004) (examining a claim under the Administrative Procedure Act, 5 U.S.C. § 706 et seq.); accord Sioux Honey, 672 F.3d at 1061 (applying Norton's limitation on challenges to agency inaction to the issue of standing in the Customs context).

The record here indicates that Plaintiff never applied for a distribution of CDSOA funds for FY 2010 or 2011. As Barden admits, "Barden did not file certifications with Customs for fiscal years 2010 and 2011." Complaint at ¶ 37, Court No. 12-00247, ECF No. 5. Pursuant to regulation, Customs distributes CDSOA funds only in response to certifications filed by producers. 19 C.F.R. § 159.63 (2012).[7] That regulation requires, among other things, that "[i]n order to obtain a distribution of the offset, each affected

---

[7] In December 2012, a minor modification of this section was made. See Technical Corrections to U.S. Customs and Border Protection Regulations, 77 Fed. Reg. 73,309 (Dep't of Homeland Security Dec. 10, 2012) ("removing the words 'Office of Finance' and adding in their place the words 'Office of Administration'"). The provision otherwise remains in effect in unchanged form to the present. All further citations to the Code of Federal Regulations are to the 2012 edition.

domestic producer must submit a certification . . . that must be received within 60 days after" Customs publishes a notice of distributions. Id. at § 159.63(a). The certification must indicate "that the affected domestic producer desires to receive a distribution," list "qualifying expenditures incurred," and "demonstrate that the domestic producer is eligible to receive a distribution as an affected domestic producer." Id. The regulation does not require Customs to decide whether to distribute CDSOA funds to a producer absent a certification. Not only has Barden admitted that it filed no certifications for FYs 2010 and 2011, it also has failed to challenge the requirement in 19 C.F.R. § 159.63 that it do so. Since Barden filed no certifications for FYs 2010 and 2011, there was nothing for Customs to decide regarding Barden. Unlike in FYs 2007, 2008, and 2009, Customs was not called on to apply the CDSOA or its acquisition clause to Barden for FYs 2010 and 2011. Thus, Customs did not refuse to give Barden a CDSOA distribution for those years. Customs neither took agency action nor unlawfully withheld required agency action respecting Barden for FYs 2010 and 2011. Barden's injury was caused by Barden alone—through its failure to apply for a distribution—not by any action or refusal of action on the part of Customs.

This case is akin to Simon v. Eastern Kentucky. Welfare Rights Orginization, in which indigent individuals and associations of indigents sued the IRS for granting favorable tax treatment to hospitals that refused to provide plaintiffs with certain services. 426 U.S. at 28. The Supreme Court rejected standing because "[i]t is purely speculative whether the denials of service specified in the complaint fairly can be traced to [the IRS]'s 'encouragement' or instead result from decisions made by the hospitals without regard to

the tax implications." Id. at 42-43. Here, the break in causation is even more stark: Barden's own failure to file certifications, rather than the action of a third party, was the cause of Barden's injuries in FYs 2010 and 2011.

Barden's complaint seeking a remedy for FYs 2010 and 2011 asserts that "Barden did not file certifications with Customs for fiscal years 2010 and 2011 as, based upon the blanket denials in years 2007, 2008 and 2009, it would have been futile to do so." Compl. ¶ 37, Court No. 12-00247, ECF No. 5. But futility, although often recognized as a possible exception to the requirement that a party exhaust administrative remedies prior to bringing a judicial challenge to an agency action, will not suffice where, as here, the issue is not exhaustion but jurisdiction due to a lack of standing.

Barden also asserts in its complaint for FYs 2010 and 2011 that it has standing because "[t]he Court can redress Barden's injury by ordering the requested relief." Id. ¶ 9. However, the court could not provide any remedy in the circumstance Barden has pled. Barden failed to comply with the essential regulatory requirement of filing the necessary certifications for Customs to consider. See 19 C.F.R. § 159.63. Therefore, even were Barden to succeed on the merits of its constitutional claims, the court still would lack the power to order Customs to provide Barden CDSOA distributions in the absence of certifications. This inability is another reason why the court concludes that Barden lacks standing to assert its constitutional claims for FYs 2010 and 2011.

As Plaintiff lacks standing, the court has no jurisdiction over Plaintiff's claims arising from FYs 2010 and 2011. Consequently, the court sua sponte dismisses the claims in the 2012 complaint.

## IV. Conclusion

For the aforementioned reasons, the court determines that the acquisition provision of the CDSOA is supported by a rational basis and therefore satisfies the equal protection guarantee of the Constitution. The court determines that Barden lacks standing to challenge the CDSOA on due process retroactivity grounds and also lacks standing to assert claims relating to FYs 2010 and 2011. Barden's motion for judgment on the agency record is denied. The court will enter judgment for Defendants.

_____/s/ Leo M. Gordon_____
Judge Leo M. Gordon

Dated:    February 10, 2016
          New York, New York